CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

6/4/2026
LAURA A. AUSTIN, CLERK
BY:  s/ ARLENE LITTLE
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## LYNCHBURG DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 6:03-cr-30073 |
| JAMES READ DAVIS, | ) | |
| | ) | By: Michael F. Urbanski |
| Defendant | ) | Senior United States District Judge |

### MEMORANDUM OPINION

This matter is before the court on defendant James Read Davis's pro se motion for early termination of supervised release. ECF No. 790. For the reasons stated below, the court **DENIES without prejudice** Davis's motion.

On March 1, 2004, Davis pled guilty to one count of conspiracy to distribute and possess with intent to distribute 500 grams or more of a mixture and substance containing methamphetamine and 50 grams or more of methamphetamine. Plea Agreement, ECF No. 118. It was determined that Davis was involved in the distribution of 21.66 kilograms of methamphetamine. Pre-Sentence Investigation Report (PSR), ECF No. 784 ¶ 29.

While incarcerated prior to entering the plea agreement, Davis attempted to solicit another inmate to murder several people, including the wife of a codefendant who Davis perceived to be a "snitch, " Davis's own nephew, also perceived to be a "snitch," the prosecutor in the case, and the granddaughter of the judge presiding over his case. Davis offered the other inmate $10,000, a boat, and a truck as compensation for the murder of his codefendant's wife. Id. ¶¶ 52–53. In recorded conversations from jail, Davis threatened to kill

another inmate unrelated to his case as well as the wife of an unindicted co-conspirator who he believed had talked to authorities, and again threatened his own nephew. Id. ¶ 58–60.

When interviewed by authorities, Davis acknowledged the conversations but said that it was the other inmate who suggested Davis eliminate witnesses and "send a message to the feds" by killing the prosecutor's family. Davis said that he and the other inmate only discussed killing the judge's granddaughter and the prosecutor's family but that he was not serious about any of it. Id. ¶ 62–63. Davis said he understood why the other inmate thought he was serious, because he never told him that he was not serious, and never told him not to harm anyone. He acknowledged that he led the other inmate to believe that he would give him a boat and a truck, but never actually offered them to him. Davis gave no other explanation for why he would have given the other inmate the boat and the truck. Id. ¶ 64. Davis attributed the conversations to "jailhouse talk" and said he was never serious about the threats. Id. ¶ 66. Based on the conversations, Davis's offense level was increased by two points for obstruction of justice. Id. ¶ 74.

On March 17, 2006, the court sentenced Davis to a term of 240 months' incarceration, to be followed by a ten-year term of supervised release. J., ECF No. 600.[1] Davis was released from custody on October 28, 2020, and has now served approximately five-and-a-half years of his term of supervised release. Mot., ECF No. 41. The court sought input from the United States Probation Officer who supervises Davis. The officer advised that Davis has done very well on supervision as he has maintained a stable residence, consistently worked, and has been

---

[1] The judge whose granddaughter Davis threatened recused himself and Davis's case was reassigned to another judge. ECF No. 276.

married since 2023. Davis has not incurred any violations or charges since being released. Nevertheless, based on Davis's egregious pretrial conduct, the probation officer does not recommend early termination of supervised release. The government is opposed to Davis's motion based on the threats he made. ECF No. 795.

Pursuant to 18 U.S.C. § 3583(e), a court may, after considering the factors set forth in § 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7), terminate a period of supervised release at any time after the expiration of one year of supervised release if it is satisfied that such action is warranted by the conduct of the defendant and the interest of justice. The following factors are to be considered: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the United States Sentencing Guidelines; (4) any pertinent policy statement issued by the United States Sentencing Commission; (5) the need to avoid unwarranted sentencing disparities among defendants; and (6) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

Courts have discretion to grant early termination of supervised release, even when the conditions for termination are met. Folks v. United States, 733 F.Supp.2d 649, 651 (M.D.N.C. 2010). In addition, the inquiry is broader than the individual's conduct. Id. (citing United States v. Pregent, 190 F.3d 279, 282-83 (4th Cir. 1999)). "Circumstances that justify early discharge

3

have included exceptionally good behavior that makes the previously imposed term of supervised release 'either too harsh or inappropriately tailored to serve' general punishment goals." Id. (quoting United States v. Lussier, 104 F.3d 32, 36 (2d Cir. 1997)). Neither the passage of time nor full compliance with the terms of supervised release are sufficient bases to warrant early termination. Id. at 652 (collecting cases). But "[a]llocation of scarce resources counsels in favor of terminating supervision in cases . . . where services and oversight are no longer needed." United States v. Lyons, No. CR DKC 13-0282-3, 2020 WL 7769782, at *2 (D. Md. Dec. 30, 2020) (granting motion for early termination of supervised release where the parolee, convicted of a drug trafficking conspiracy and possession of a firearm in furtherance thereof, was transitioning "very well" and he consistently tested negative in random drug testing).

Turning to the § 3553(a) factors and looking at the nature and circumstances of the offense, Davis participated in a large and long-running conspiracy to distribute methamphetamine in and around the Lynchburg, Virginia area. PSR, ECF No. 784 ¶ 20. Davis also laundered proceeds from the conspiracy through his landscaping business. Id. ¶ 21. In addition, credible accusations were made that Davis attempted to solicit a fellow jail inmate to murder family members of potential witnesses as well as the prosecutor and the granddaughter of the federal judge presiding over his case. The serious and dangerous natures of both the drug offense and the threats weigh heavily against early termination of supervised release.

Regarding his history and characteristics, Davis was a daily methamphetamine user for the last three or four years prior to his incarceration. He also described himself as an alcoholic. Id. ¶ 110. In his motion seeking early termination of supervised release, Davis advises the

4

court that he has not used drugs or alcohol since 2003. Mot., ECF No. 790 at 2. As set forth above, Davis has done very well on supervision. The court finds that Davis's recent history and characteristics are favorable regarding early termination of supervision.

Looking at the need for the sentence to provide deterrence to criminal conduct and protect the public, having Davis remain on supervised release will address both of these important concerns. Davis tells the court that he knows that his behavior was wrong and that he has learned his lesson, id. at 1–2, and the court does not doubt the sincerity of his statement. Nevertheless, the court cannot discount the chilling and violent nature of the conversations between Davis and others regarding his desire to murder people and family members of people involved in his case. Remaining on supervised release provides Davis with continued structure and accountability and offers assurance to the public that he will continue to be monitored by his probation officer.

Regarding the established sentencing range for the category of Davis's offense, he faced a statutory term of supervised release of five years to life. PSR, ECF No. 784 ¶¶ 117–18. The fact that Davis has served only slightly more than the minimum term of supervision weighs in favor of his remaining on supervised release. None of the remaining § 3553(a) factors weigh either in favor or against early termination of supervised release.

The court is impressed with Davis's success thus far during his term of supervision but concludes that having him remain on supervised release will protect the public and continue to deter criminal conduct. Accordingly, the court **DENIES without prejudice** Davis's motion for early termination of supervised release. Davis may file another motion for early termination of supervised release when he has served seven years of his term.

An appropriate order will be entered.

It is so **ORDERED**.

ENTERED: June 3, 2026

Michael F. Urbanski
Senior United States District Judge

6